UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBINSON ACOSTA-LITARDO,

Petitioner,

v.

CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Center, et al.,

Respondents.

Case No.: 26-CV-4441 JLS (JAC)

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 5)

Presently before the Court is Robinson Acosta-Litardo's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 5). Also before the Court is Respondents' Return to Habeas Petition ("Ret.," ECF No. 7) and Petitioner's Traverse ("Traverse," ECF No. 8). For the reasons set forth below, the Court **GRANTS** the Petition.

## BACKGROUND

Petitioner, a citizen of Ecuador, alleges that he has been detained by the United States Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") division at the Otay Mesa Detention Center. Pet. at 2. On June 4, 2024, Petitioner entered the United States where he was detained for a day. *Id.* Petitioner was then paroled into the United States to allow him to apply for asylum. *Id.* After he was

paroled, Petitioner was placed into removal proceedings and submitted an asylum application. *Id.*

On March 5, 2026, Petitioner was "accused of" petit theft and "questioned by the police." *Id.* The parties dispute whether Petitioner was in fact arrested following this accusation, with Respondents claiming that he was (Ret. at 2, Ex. 2) and Petitioner maintaining that he was not, Traverse at 1. ICE officials then arrested Petitioner and revoked his parole without explanation or an opportunity to contest his detention. Pet. at 3. Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. *See generally id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

### I. Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Ret. at 3–4. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any

alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings. Ret. at 3. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging his re-detention without notice or justification. Pet. at 2–3. Petitioner is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction.

## II. Due Process

Petitioner argues that the summary revocation of his parole without notice or a hearing violates the Due Process Clause. Pet. at 5. The Court agrees.

### *A. 8 U.S.C § 1226(c) Does Not Defeat Petitioner's Claims*

As an initial matter, Respondents contend that Petitioner's due process claims fail because his detainment is mandated under 8 U.S.C. § 1226(c)(1)(E). Ret. at 4. This argument is without merit. Section 1226(c) provides for the mandatory detention of a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed,

or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c).

As noted above, whether Petitioner was ever arrested is in dispute. Respondents argue that Petitioner was arrested by police for petit larceny and is thus subject to mandatory detention under § 1226(c). Ret. at 4. But Petitioner rightly counters that Respondents have failed to submit any evidence of the arrest or evidence that official charges are still pending against Petitioner. Traverse at 2–3. Respondents' support for Petitioner's arrest amounts to a DHS Record of Deportable/Inadmissible Alien, in which the reporting officer states that Petitioner was arrested and that the charge was pending as of March 3, 2026. Ret., Ex. 2. This self-serving evidence is insufficient to establish that Petitioner was arrested at all, let alone that charges are still pending against him. *Cf. Rios Mendoza v. Mullin*, No. 26-CV-2825 JLS (AHG), 2026 WL 1507832, at *2 (S.D. Cal. May 29, 2026) (granting in part a habeas petition on due process grounds despite the government providing a copy of the petitioner's arrest report).

Even if Respondents could provide additional proof of Petitioner's arrest, their efforts would still fall short. "[R]equiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge Petitioner with a crime, raises serious due process concerns." *Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026). "To avoid those concerns, courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and concluding mandatory detention is not required when charges are never filed, *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025), or where an individual has been acquitted, *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025)." *Id.*; *see also Cobis-Gamboa v. Warden*, No. 2:26-CV-0658 DC CKD P, 2026 WL 1133342, at *2 (E.D. Cal. Apr. 27, 2026) ("[A]llowing mandatory detention based upon arrest alone would essentially be a finding

that [P]etitioner is entitled to no due process protection over and above what is granted by statute."); *Gopal B. v. Albarran*, No. 1:26-CV-01083-TLN-CKD, 2026 WL 504736, at *3 (E.D. Cal. Feb. 24, 2026), *enforced*, No. 1:26-CV-01083-TLN-CKD, 2026 WL 807587 (E.D. Cal. Mar. 24, 2026). Nowhere in Respondents' Return do they argue that Petitioner is currently charged with the crime he was accused of.[1] *See generally* Ret.

***B. Respondents' Revocation of Petitioner's Parole Violated the Due Process Clause***

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released

[1] As noted above, the DHS record states that Petitioner had charges pending against him. Ret., Ex. 2. In addition to being self-serving, this is inadequate for two reasons. First, Respondents do not contend that charges are still pending in the body of their brief. *See generally* Ret. And second, the report was made on March 5, 2026, so there is no indication that charges remain pending as of the date of this Order.

from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp at 1032 (citing *Romero v. Kaiser*, No. 22-cv-20508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Here, Petitioner was briefly detained by ICE, after which he was paroled into the United States, Pet. at 2, thus entitling Petitioner a protected liberty interest. *Pinchi*, 792 F. Supp at 1032. As Petitioner has such an interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. at 3. Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d

1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. And, as explained above, Respondents' Exhibit is not enough to prove that Petitioner was arrested, much less a flight risk or dangerous. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1042 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp at 1035; *Matute v. Wofford*, 807 F. Supp. 3d 1120, 1126 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

/ / /

/ / /

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. The Parties are **ORDERED** to file a Joint Status Report by September 4, 2026, confirming that Petitioner has been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 28, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge